617 P.2d 531

James P. McNEIL, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

The City of Tempe/Kyrene School District # 28, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA–IC 2304.

Court of Appeals of Arizona, Division 1, Department C.

Sept. 16, 1980.

Venable, Rice, Lee & Capra, by Gilbert T. Venable, Phoenix, for petitioner.

Calvin Harris, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Donald L. Cross, Larry L. Smith, Phoenix, for respondent Employer The City of Tempe.

**580**

Moore, Demaree & Long, by James B. Long, Phoenix, for respondent Employer Kyrene School Dist. # 28 and respondent carrier State Compensation Fund.

## OPINION

JACOBSON, Presiding Judge.

This review of an award of the Industrial Commission presents the issue of whether federal regulations require that a CETA employee be deemed to be an employee of the "program agent" rather than an employee of the agency which actually utilizes the employee's services.

Both parties agree that the hearing officer's findings of fact adequately reflect the factual posture of this matter, the only controversy being what legal conclusions are to be drawn therefrom.

Sometime in May, 1978, petitioner, James P. McNeil, started working as a maintenance man and carpenter under the federally funded Comprehensive Employment and Training Act (CETA). While working in this capacity petitioner suffered an industrial eye injury which is conceded by all parties to be the industrial responsibility of the State Comprehension Fund. Since the sole issue is which entity under the CETA program is to be considered the petitioner's employer, a review of that program is in order.

The CETA program is federally funded and has as its purpose the providing of federal monies to train and employ previously unemployed or underemployed individuals. The federal funds are first distributed to a "sponsoring organization" which in the Phoenix metropolitan area is either the County of Maricopa or the City of Phoenix. These sponsoring organizations either use the CETA funds directly to pay employees working for that sponsor, or distribute the funds to "program agents", in this case, respondent City of Tempe, which originally interviewed and processed the petitioner.

In turn, the "program agent" may use the CETA funds to hire qualified individuals to work either directly for the program agent or for "out stations", normally under nonprofit organizations such as school districts. The petitioner in this matter is classified as an "out station employee", that is, he is paid with federal funds which have passed through the proper channels from the federal government to the sponsoring organization (Maricopa County) and eventually to the program agent (City of Tempe), but the employee does not perform any services for the sponsoring organization or the program agent; his work is of direct benefit to the "out station", in this case, respondent Kyrene School District (Kyrene).

When petitioner made application for CETA employment, he was directed to report to the City of Tempe personnel division to fill out an application. He was interviewed by that division of the City of Tempe and then sent to an interview with a Mr. Warren Converse, the maintenance supervisor for Kyrene. Following a successful interview with Mr. Converse, petitioner was sent back to the City of Tempe where his employment application was approved and he was given a City of Tempe employee handbook and was told he was to be working under the supervision of Mr. Converse.

During the entire period of petitioner's employment, he worked solely under the supervision of Mr. Converse at four different schools in the Kyrene School District. He performed services for no other entity and received the complained of injury while performing services beneficial to Kyrene. Petitioner was paid for his services by checks drawn on the City of Tempe for the services rendered to Kyrene. The actual money to cover these checks was received from the federal government through the CETA program.

On December 27, 1978, the petitioner suffered the industrial injury and filed a workmen's report of injury alleging that the City of Tempe was his employer. The respondent State Compensation Fund (Fund), as insurer for the City of Tempe, issued a notice of claim status denying the petitioner's claim for benefits. Although no claim had been filed with Kyrene, the Fund, also Kyrene's insurer, issued a notice of claim

status stating that Kyrene was petitioner's employer and on behalf of the employer accepted all industrial responsibility for petitioner's injury. The petitioner timely protested denial of his claim as to the City of Tempe and hearings were held limited to the issue of which entity, City of Tempe or Kyrene, was petitioner's employer at the time of the industrial accident.[1] The hearing officer, based upon the undisputed facts, found that Kyrene was petitioner's employer, utilizing the familiar workmen's compensation principles of right to control/responsibility/benefits received. Petitioner, after exhaustion of administrative review, has sought review in this court.

The petitioner first argues that under the applicable principles of Arizona Workmen's Compensation Law, the hearing officer erred in determining that Kyrene was petitioner's employer. We disagree. Kyrene received the benefits of petitioner's work, it supervised and controlled his day–to–day activities in performing that work and Kyrene was the entity to whom petitioner was responsible for the work performance. Using the criteria of control, responsibilities and benefits, the court concludes that there was sufficient evidence to support the hearing officer's finding that petitioner was an employee of Kyrene. *See Employer's Mutual Liability Insurance Company of Wisconsin v. Industrial Commission*, 18 Ariz.App. 403, 502 P.2d 1080 (1972). The fact that the petitioner was paid for his services by Tempe through federal funds is, in and of itself, not controlling. *State Compensation Fund v. Le Desma*, 23 Ariz.App. 126, 531 P.2d 171 (1975).

Petitioner next argues that because of certain federal regulations dealing with the CETA program, as a matter of federal law the petitioner is an employee of Tempe and that this federal law determination controls here. The federal regulations relied upon provide in part:

29 C.F.R. § 96.23(b)(6):

Outstationed participants are still to be considered employees of the employing agency and shall be assured of the same working conditions and benefits, as specified by section 98.24, as received by other similarly employed employees of the employing agency (not of the outstationed worksite).

29 C.F.R. § 98.24(a)(1):

Each participant in an on–the–job training, work experience or public service employment program under the Act shall be assured of worker's compensation at the same level and to the same extent as other employees of the employer who are covered by a State or industry worker's compensation statute. Whether provided through the State's compensation agency or a private insurance carrier, this coverage includes medical or accident insurance as well as income maintenance insurance.

29 C.F.R. § 98.24(c):

Every participant must be advised prior to entering upon employment of the name of his employer, and his rights and benefits in connection with his employment . . . .

Petitioner has argued that under Article VI, Clause 2 of the United States Constitution (the Supremacy Clause) the federal regulations control over state law. Accordingly, the ultimate determination for this court is whether the federal statute creating the CETA program and the regulations promulgated to enforce that legislation were intended to regulate the state's determination of who ultimately must provide workmen's compensation coverage or merely require that workmen's compensation coverage be available to all CETA employees regardless of the source. In our opinion, a reading of the regulations as a whole leads to the conclusion that the federal scheme is concerned not with who must ultimately provide workmen's compensation

---

1. There is no question that petitioner is receiving all the workmen's compensation benefits to which he is entitled from the only insurer which could possibly be liable for those benefits. However, because of possible "third party" tort claims, the issue of who is his employer remains viable.

coverage, but only that this coverage is in fact provided.

We first note that the original contract between the sponsoring organization (Maricopa County) and the Federal Department of Labor requires assurances by the sponsoring organization that workmen's compensation protection shall be afforded CETA employees "at the same level and to the same extent as other employees." 29 C.F.R. § 95.14(b)(3)(i)(M). This overall requirement is echoed in § 98.24(a)(1) which states that "each participant . . . shall be assured of worker's compensation . . . ." However, under the regulations, "subgrants" may be entered into by the program agent (Tempe), 29 C.F.R. § 28.27(b), provided that the program agent "shall require that its contractors and subgrantees adhere to the requirements of the Act, regulations promulgated under the Act, and other applicable law." 29 C.F.R. § 98.27(d).

Thus the regulations envision many levels at which CETA employees may be utilized both in the public and private (nonprofit) sectors, the overall concern being that at whatever level the employee performs services, workmen's compensation protection shall be afforded.

It is in this light that 29 C.F.R. § 96.23(b)(6) must be read when it uses the language "outstationed participants are still to be considered employees of the employing agency." This particular regulation is entitled (Acceptable Public Employment Positions." Subsection (b) of that regulation provides: "In developing job opportunities under this Part 96 the following requirement shall apply." This is followed by a list of overall objectives. Then acceptable employment positions are listed in order of priority. Subsection (4) provides that "jobs shall be allocated among State and local public agencies and subdivisions thereof, such as educational agencies . . . ." This is followed by subsection (5) which provides that private nonprofit agency jobs may be allocated. Next comes subsection (6) which states that "participants may be outstationed at worksites." It is in this last unclassified category that the employee is deemed to be an employee of the original employing agency.

In our opinion, this does not constitute a strict federal fiat that all outstationed employees are for all purposes, including interpretation of state law, to be considered only employees of the City of Tempe, the employing agency. Rather, this regulation merely assures that persons performing work at these "worksites" for organizations that may not provide workmen's compensation coverage shall enjoy the coverage mandated by the program.

Since it is clear here that petitioner is provided workmen's compensation coverage, the federal requirements are satisfied. It is left to state law interpretation as to who must bear the ultimate liability for that coverage.

We find that the coverage provided by Kyrene to petitioner fully comports with the CETA regulations and thus the Supremacy Clause of the United States Constitution is not violated by a finding that for purposes of assessing workmen's compensation liability Kyrene is petitioner's employer.

The award is affirmed.

OGG, C. J., Division 1, and DONOFRIO, J., concur.